1  Edmundo P. Robaina (No. 018125)
   ROBAINA & KRESIN PLLC
2  5343 North 16th Street, Suite 200
   Phoenix, Arizona 85016-3231
3  Telephone: (602) 682-6450
   Facsimile: (602) 682-6455
4  epr@robainalaw.com
5
6  Attorneys for Plaintiff Kristi Adams

7                    UNITED STATES DISTRICT COURT
8                        DISTRICT OF ARIZONA

9  Kristi Adams,
                                            No.
10             Plaintiff,
11  v.                                      **COMPLAINT**
12  Maricopa County,
                                            **(Jury Trial Demanded)**
13             Defendant.
14
15

16         Plaintiff Kristi Adams ("Adams") alleges the following:

17         1.     This action is brought pursuant to the Americans with Disabilities Act of

18  1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C.

19  § 701 *et seq.*

20         2.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

21         3.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(c).

22         4.     Adams is an adult female who resides, and at all relevant times resided, in

23  Phoenix, Maricopa County, Arizona.

24         5.     Defendant Maricopa County (the "County") is a political subdivision of the

25  State of Arizona, and can sue and be sued pursuant to A.R.S. § 11-201.

26         6.     The County employs, and at all relevant times employed, more than fifteen

27  (15) regular employee and is a "covered employer" under the ADA.

28         7.     Upon information and belief, the County receives or distributes federal

financial assistance.

8.    Adams was employed as an attorney with the County's Office of the Public Defender (the "Public Defender's Office") from April 19, 1999 until February 19, 2019, when her employment was terminated.

9.    Throughout her employment with the Public Defender's Office, Adams worked in the Probation Violation Department, representing indigent clients who were alleged to have violated the terms of their probation.

10.    Year after year, Adams' work methods in the Probation Violation Department yielded unsurpassed results for her clients.

11.    For instance, in 2018, Adams set 169 probation violation hearings.  All of the cases against her clients were dismissed – 116 prior to a hearing and 53 as a result of a hearing.

12.    Because of her consistently superior efforts, Adams received excellent evaluations throughout her employment, and her supervisors routinely praised her knowledge, commitment, effort, and teamwork.

13.    Adams was able to perform at a high level despite the fact that she has for many years suffered from significant mental and physical disabilities.

14.    Adams suffers from, among other disabling conditions, Bi-Polar Disorder 1 ("BPD"), Post-Traumatic Stress Disorder ("PTSD"), and Generalized Anxiety Disorder ("GAD").

15.    Adams' BPD can manifest itself in behavior that includes, among other things, agitation, irritability, mood swings and low frustration tolerance, and impulsivity.

16.    Adams' PTSD can manifest itself in, among other things, heightened reactions, irritability, severe anxiety, mistrust, hypervigilance, nightmares and flashbacks.

17.    The combination of Adams' impairments and the medications she takes for them substantially affect her ability to, among other things, think, sleep, concentrate, and interact with others.

18.    As a result of the manifestations of her BPD and PTSD, Adams periodically

received verbal or written counselings or warnings related to perceived "aggressive," "hostile," "rude," or "discourteous" behavior.

19.    In July of 2018, Adams went on FMLA leave because of physical issues related to the medications she takes for the BPD and PTSD.

20.    Shortly after her return on August 8, 2018, Adams, who was still adjusting to the change in medications, and not feeling well, instructed her secretary, Lupe Landeros, to send a letter to an adult probation officer.

21.    For strategic reasons, Adams specifically requested a letter, and not an email.

22.    The next day, Adams learned that Ms. Landeros had failed to follow her instructions, and Adams was very displeased and let Ms. Landeros know it.

23.    Landeros complained, and an investigation was conducted into Landeros' complaint by the Public Defender's Office Human Resource Manager, Diane Terribile.

24.    During her investigation, Ms. Terribile solicited other complaints against Adams from the persons she interviewed.

25.    This resulted in a second allegation that on August 10, 2018, Adams was "viewed as" having acted aggressively toward Deputy Public Defender Francis Robinson by someone who witnessed an interaction between Adams and Robinson, a claim that Robinson, herself, denied.

26.    Maricopa County Merit System Rule 9.03, Separations and Disciplinary Actions, provides in pertinent part, that:

> The appointing authority may ….dismiss a regular employee only for cause…Prior to such action the appointing authority shall provide the employee a written statement indicating the action that is proposed to be taken, the sections of the Resolution, these Rules, County policies and/or procedures, or departmental rules violated, and the specific reasons for the action in sufficient detail to apprise the employee of the factual circumstances which justify the proposed action.

> The appointing authority shall include in the statement to the employee notice of the employee's right to present reasons why the proposed action should not have been taken…

1

2

3

> After giving the employee an opportunity to provide reasons as
> provided above, the appointing authority may affirm, reduce or
> abandon the proposed action by providing written notice of the
> final decision to the employee…

4      27.    On February 4, 2019, pursuant to, among other rules, Rule 9.03, Maricopa

5   County Public Defender James Haas sent Adams a letter notifying Adams of Haas' intent

6   to terminate her employment with the Public Defender's Office based on allegations of

7   unprofessional and discourteous treatment toward Landeros and Robinson, and previous

8   incidents of alleged "discourteous" or "ongoing abusive" behavior.

9      28.    In the notice, in accordance with Rule 9.03 (C) and due process requirements,

10   Adams was provided the opportunity to respond to the charges orally or in writing, and to

11   have a "pre-disciplinary" hearing.

12      29.    On February 11, 2019, Adams, through her legal counsel, wrote Haas a letter

13   in which she explained that she suffers from, among other conditions, BPD and PTSD.

14   Adams attached to her letter, among other items, a letter written by her psychiatrist, Dr.

15   James Hicks, indicating that Adams was first diagnosed with BPD and PTSD in 1990.  In

16   his letter, Dr. Hicks further noted that:

17

18

19

20

21

22

23

> Bi-Polar Disorder may manifest itself in behavior that includes
> agitation, irritability, hostility and low frustration tolerance.
> Marked characteristics of BPD include extreme mood swings,
> anger, verbal aggression, impulsivity, lack of concentration,
> mental confusion, Insomnia, high energy, and fatigue.  Speech
> and demeanor may present as frenzied, impatient, abrupt,
> demanding or impolite.  Mood episodes may last days to months
> at a time and may also be associated with suicidal thoughts.
> Stress and major environment factors are contributors.

24

25

> Post-Traumatic Stress Disorder may manifest itself in
> heightened reactions, irritability, severe anxiety, mistrust,
> hypervigilance, nightmares, and flash backs.

26

27

28

> Persons with BPD and PTSD often present with issues related
> to anxiety, anger control and interpersonal communication
> problems when under stress or pressure.

30.     In her February 11, 2019 letter, Adams noted, among other things, that she had expressed to Dianne Terribile during the investigation that when she is under a lot of pressure, she can be "short" and "sharp;" and that she has struggled with this her whole life; that she tries to be cognizant of this fact; that when she reacts poorly to a situation, she attempts to make amends as soon as possible.

31.     Adams also wrote that while she did not agree with all of the characterizations in the Notice of Intent, some of the incidents described were clearly manifestations of her disability.

32.     Adams further requested that she be given an opportunity to meet with Mr. Haas to discuss possible accommodations that would allow her to continue to work for the Public Defender's Office.

33.     On February 13, 2019, at a pre-disciplinary meeting with Mr. Haas and Respondent's counsel, Adams, through her attorney, again explained that Ms. Adams' suffers from, among other things BPD and PTSD; explained that Adams' offending acts were manifestations of her disabilities; and requested the opportunity to discuss possible accommodations that would allow Adams to continue to work at the Public Defender's Office.

34.     Haas denied Adams' request for an opportunity to discuss possible accommodations.

35.     On February 19, 2019, Haas sent Adams a notice of dismissal, terminating Adams' employment as of that date.

36.     As a result of the County's actions, Adams has suffered and continues to suffer lost income and fringe benefits, mental anguish and emotional distress.

37.     Adams received a notice of Right to Sue from the Equal Employment Opportunity Commission on July 10, 2019 and has fulfilled all administrative prerequisites for the filing of her ADA claims in this case.

///

///

**COUNT ONE**

**(Discrimination Based on Disability – ADA)**

38.  Adams incorporates by reference all previous allegations as though set forth herein.

39.  Adams has, and at all relevant times had, substantial mental impairments including Bi-Polar 1 Disorder, Post Traumatic Stress Disorder, and Generalized Anxiety Disorder; as well as several significant physical impairments related to her mental impairments or medications she takes for her mental impairments.

40.  Adams' impairments limit several major life activities including her ability to think, sleep, concentrate, and interact with others, and are disabilities under the ADA.

41.  Adams' conduct of acting aggressively or in a hostile manner toward others with whom she interacted during times of unusual stress resulted from her disabilities and were part of her disabilities.

42.  Adams was a qualified individual with disabilities who, with or without accommodations, was able to perform the essential functions of her job.

43.  The County had knowledge of Adams' disabilities prior to the date it took unequivocal adverse action against Adams.

44.  Adams was discharged because of her disabilities.

**COUNT TWO**

**(Failure to Reasonably Accommodate – ADA)**

45.  Adams incorporates by reference all previous allegations as though set forth herein.

46.  On February 11, 2019, and again on February 13, 2019, Adams requested accommodations due to her disabilities.

47.  Once Adams made a request for accommodations, the County had a duty under the ADA to interact with Adams to determine whether reasonable accommodations could be made that would allow her to continue to perform the essential functions of her job.

48.     At the time of Adams request for accommodations, the County had not made a final determination to terminate Adams' employment.

49.     The County could have made a reasonable accommodation or reasonable accommodations that would have enabled her to continue to perform the essential functions of her job.

50.     The County failed to engage in an interactive process even though a reasonable accommodation or accommodations, such as, among other things, flexible hours, a self-paced workload, intermittent leave or the ability to occasionally work from home would have been available.

51.     The County failed to provide Adams a reasonable accommodation or reasonable accommodations.

### COUNT THREE

### (Discrimination Based on Disability – Rehabilitation Act)

52.     Adams incorporates by reference all previous allegations as though set forth herein.

53.     Adams has, and at all relevant times had, substantial mental impairments including Bi-Polar 1 Disorder, Post Traumatic Stress Disorder, and Generalized Anxiety Disorder, as well as several significant physical impairments related to her mental impairments or medications she takes for her mental impairments.

54.     Adams' impairments limit several major life activities including her ability to think, sleep, concentrate, and interact with others, and are disabilities under the Rehabilitation Act.

55.     Adams' conduct of acting aggressively or in a hostile manner toward others with whom she interacted during times of unusual stress resulted from her disabilities and were part of her disabilities.

56.     Adams was a qualified individual with disabilities who, with or without accommodations, was able to perform the essential functions of her job.

57.     The County had knowledge of Adams' disabilities prior to the date it took

1 | unequivocal adverse action against Adams.

2 |     58.    Adams was discharged solely because of her disabilities.

3 | **COUNT FOUR**

4 | **(Failure to Reasonably Accommodate – Rehabilitation Act)**

5 |     59.    Adams incorporates by reference all previous allegations as though set forth
6 | herein.

7 |     60.    On February 11, 2019, and again on February 13, 2019, Adams requested
8 | accommodations from the County due to her disabilities.

9 |     61.    Once Adams made a request for accommodations, the County had a duty
10 | under the Rehabilitation Act to interact with Adams to determine whether reasonable
11 | accommodations could be made that would allow her to continue to perform the essential
12 | functions of her job.

13 |     62.    At the time of Adams request for accommodations, the County had not made
14 | a final determination to terminate Adams' employment.

15 |     63.    The County could have made a reasonable accommodation or reasonable
16 | accommodations that would have enabled her to continue to perform the essential functions
17 | of her job.

18 |     64.    The County failed to engage in an interactive process even though a
19 | reasonable accommodation or accommodations, such as, among other things, flexible
20 | hours, a self-paced workload, intermittent leave or the ability to occasionally work from
21 | home would have been available.

22 |     65.    The County failed to provide Adams a reasonable accommodation or
23 | reasonable accommodations.

24 |     WHEREFORE, Plaintiff Kristi Adams requests judgment against Defendant
25 | Maricopa County as follows:

26 |         A.    For an award of economic damages in an amount to make Adams
27 |                 whole for past and future lost income and benefits, and other
28 |                 economic losses incurred by Adams as a result of the County's

1    actions;

2    B.    For an award of compensatory damages for mental anguish and

3          emotional distress and other losses suffered by Adams as a result of

4          the County's conduct;

5    C.    For an award of attorneys' fees and related expenses pursuant to 29

6          U.S.C. § 794a (b).

7    D.    For an award of prejudgment and post-judgment interest;

8    E.    For an award of Adams' costs of suit incurred herein; and

9    F.    For an award of such other relief as the Court deems just and proper.

10   RESPECTFULLY SUBMITTED this 23rd day of September 2019.

11                              ROBAINA & KRESIN PLLC

12

13                              By  /s/ Edmundo P. Robaina
                                    Edmundo P. Robaina
14                                  Attorneys for Plaintiff Kristi Adams

15

16                          **DEMAND FOR JURY TRIAL**

17   Plaintiff Kristi Adams hereby demands a jury trial as provided by Rule 38(a) of the

18   Federal Rules of Civil Procedure.

19   RESPECTFULLY SUBMITTED this 23rd day of September 2019.

20                              ROBAINA & KRESIN PLLC

21

22                              By  /s/ Edmundo P. Robaina
                                    Edmundo P. Robaina
23                                  Attorneys for Plaintiff Kristi Adams

24

25

26

27

28