**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristi Adams,<br><br>    Plaintiff,<br><br>v.<br><br>Maricopa County,<br><br>    Defendant. | No. CV-19-05253-PHX-MTL<br><br>**ORDER** |

Plaintiff Kristi Adams ("Plaintiff" or "Ms. Adams") asserts claims against Defendant Maricopa County ("Defendant" or the "County") for discrimination based on disability and failure to reasonably accommodate under the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). This order grants the County's Motion for Summary Judgment. (Doc. 26.)

**I.     BACKGROUND**

For twenty years, Ms. Adams was an attorney in the Maricopa County's Office of the Public Defender. (Doc. 1 at ¶ 8.) She was employed from April 19, 1999 through her termination on February 19, 2019. (*Id*.) Ms. Adams worked in the Probation Violation Department for most of that time. (*Id.* ¶ 9.)

Ms. Adams contends that she suffers "from, among other maladies, Bi-Polar Disorder I ('BPD'), Generalized Anxiety Disorder ('GAD'), Post Traumatic Stress Disorder ('PTSD') and depression." (Doc. 27 at 21 ¶ 5.) She claims to have a host of symptoms that "wax and wane randomly . . . but . . . do not resolve," including mood

swings, irritability, racing thoughts, and trouble with social situations. (*Id.* at 22 ¶¶ 6-7, 10.) Ms. Adams states that a result of her disabilities, she "periodically acted out in inappropriate ways" during her employment with the County. (*Id.* at ¶ 15.)

From July 20 through August 8, 2018, Ms. Adams took a leave of absence under the Family Medical Leave Act ("FMLA") to adjust to medication changes. (*Id.* at ¶ 17.) She received a full release to return to work on August 8, 2018, "with no restrictions," from her psychiatrist, Dr. James R. Hicks. (Doc. 27-4 at 24.) Dr. Hicks could have specified, but did not, that Ms. Adams was "able to work with accommodations." (*Id.*)

On August 10, 2018, two days after returning to work, Ms. Adams had two interactions with co-workers that the Public Defender's management staff considered to be inappropriate. (Doc. 26 at 24-25.) As a result, the County placed Ms. Adams on paid administrative leave "while her behavior was investigated." (*Id.* at 21 ¶ 6.)

The first incident involved Ms. Adams's secretary, Lupe Landeros. (*Id.* at 24-25.) After learning that Ms. Landeros had sent an email to schedule an interview, rather than by mail as requested, Ms. Adams, in her own words, became "very displeased and let [Ms.] Landeros know it." (Doc. 27 at 23 ¶ 21.) Specifically, Ms. Landeros reported that Ms. Adams came "'slamming' into her office, closed the door, and told her that she 'messed up' [Ms. Adams's] case." (Doc. 26 at 24.) Ms. Landeros also reported that Ms. Adams had called her "stupid" on numerous occasions, in front of others in the office, and that she was tired of being Ms. Adams's "punching bag." (*Id.* at 25) Ms. Adams did not dispute telling Ms. Landeros that she lacked the skills to perform her job, but claimed that her comments were a "joke." (*Id*)

In the second incident, Ms. Adams accused another attorney in her office of "deep sixing" one of her cases while she was out. (*Id.*) In the course of her conversation with the colleague, other employees overhead her comments and her use of profanity. (*Id.*) Ms. Adams admitted to showing frustration with other attorneys when discussing their work. (*Id.*)

On August 30, 2018, while Ms. Adams was on administrative leave as the County

investigated, human resources manager Diane Terribile interviewed her. Ms. Terribile stated that the interview was about "some allegations that have been presented to us about your relationships with people within and outside the office." (*Id.* at 47-50.) Ms. Terribile referenced an "incident that occurred sometime back in front of Judge Rummage—an incident that resulted in his being so angry with you that he threatened a bar complaint," as well as Ms. Adams's interactions with Ms. Landeros. (*Id*. at 47-48.) Ms. Adams stated during the interview that she previously had memory deficits, but she "also improved from [her] last test," such that she did not know if she still had memory deficits. (*Id*. at 48.) She also stated that she "can perform the essential functions of [her] job"; that she did not believe that there was any "medical reason [she] can't perform the essential functions of [her] position"; and she agreed that she was "completely and totally fit to perform the essential functions of [her] duties." (*Id.*)

During her tenure with the County, Ms. Adams was the subject of regularly conducted performance reviews. Ms. Adams states that she "received almost exclusively 'Exceeds' or equivalent ratings, but at least 'met performance expectations' or equivalent ratings, every year of her employment." (Doc. 27 at 1.) Nonetheless, she was also disciplined for misconduct throughout her tenure, most notably in the form of discourteous behavior and communication towards coworkers. (*See* Docs. 27-1 at 35-60; 27-2; 27-3 at 1-36.) The County provided Ms. Adams with multiple warnings that her conduct towards others was "abrupt," "rude," "hostile," or "discourteous." (Doc. 26 at 26-28.) Ms. Adams's coworkers also reported feeling that she was repeatedly abrasive, difficult, demanding, and impolite during the County's investigation. (*Id.* at 26.) And her supervisor reported that Ms. Adams behaved like a bully who made the work environment unpleasant and likened working with her to "being in an abusive relationship." (*Id.* at 25.)

James Haas was the Maricopa County Public Defender from 2001 to May 2020. (Doc. 26 at 19.) Mr. Hass stated in an affidavit that he made the final decision to terminate Ms. Adams "prior to" February 4, 2019. (*Id*.) He sent a letter to Ms. Hass on that date. (*Id*.) Mr. Haas's affidavit describes the letter as a "Termination Letter." (*Id*. at 20.) The letter

itself bears the subject line "Intent to Dismiss." (Doc. 26 at 24.) It outlined the "facts supporting [his] termination decision." (*Id.* at 20.) The letter also advised Ms. Adams that a pre-disciplinary hearing would be held on February 13, 2019. Ms. Adams would have the option to appear in person or to submit a written statement in advance. (*Id.* at 24.)

On February 11, 2019, Ms. Adams, through counsel, sent a letter to Mr. Haas. (Doc. 27 at 27-55.) It stated that she suffers from, "among other conditions, Bi-Polar Disorder 1 ('BPD') and Post Traumatic Stress Disorder ('PTSD'), with which she was first diagnosed in 1990." (*Id.* at 28.) This was the first time that Ms. Adams raised the issue of disabilities with the County.[1] It also stated that, although she did not agree with various characterizations in Mr. Haas's letter, the incident with Ms. Landeros "and some of the other incidents you describe, are clearly manifestations of Ms. Adams' disabilities." (*Id.* at 29.) Ms. Adams attached her past performance evaluations and a letter from her psychiatrist, Dr. Hicks, stating her diagnoses and that "[p]ersons with BPD and PTSD often present with issues related to anxiety, anger control and interpersonal communication problems when under stress or pressure." (*Id.* at 55.)

Ms. Adams and her counsel also met with Mr. Haas and the County's counsel for a pre-disciplinary hearing on February 13, 2019. (Doc. 27 at 6.) Ms. Adams raised the issue of her disabilities and requested to discuss possible accommodations that would allow her to continue to work at the Public Defender's office. (*Id.*) On February 19, 2019, Mr. Haas sent Ms. Adams a notice of dismissal. (Doc. 27-3 at 33.) It stated that, "[a]fter due consideration of the facts, I have decided to proceed with your dismissal," effective at 5:00 p.m. that day. (*Id.*)

Ms. Adams filed her Complaint against the County on September 23, 2019. (Doc. 1.) It asserts claims for discrimination based on disability and failure to reasonably accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*, as well as the same claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (*Id.* at 6-8.) The Complaint seeks economic damages and compensatory damages for mental anguish, emotional distress, "and other

---

[1] The letter does state that she first "advised he then supervisor, Rodney Mitchell, of her BPD in 2007 and again in 2009." (Doc. 27 at 28.)

- 4 -

losses." (*Id*. at 8-9.)

The County filed the pending motion for summary judgment as to all claims on May 26, 2020. (Doc. 26.) It asserts that Ms. Adams's termination was based on "misbehavior that violated standards of conduct requiring courteous treatment of employees and staff." (*Id.* at 2.) Further, the County asserts that the termination decision "was not based on any alleged disability and Plaintiff was not owed any accommodation." (*Id.*) In response, Ms. Adams contends that she is disabled and that she was terminated as a result of her disabilities, which the County failed to accommodate. (Doc. 27.) The motion is now fully briefed. (Doc. 29.) The Court heard oral argument on October 15, 2020. (Doc. 34.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the initial burden of showing that no genuine issue of material fact exists or that an element essential to the nonmovant's claim is missing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant meets its burden, the nonmovant must produce specific evidence to establish a genuine issue of material fact or show the existence of all facts material to each claim. *Id.* To meet this burden, the nonmovant "may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact." *Popovic v. Spinogatti*, No. CV-15-00357-PHX-JJT, 2016 WL 2893426, at *5 (D. Ariz. May 18, 2016); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (non-movant must present affirmative evidence to defeat a properly supported motion for summary judgment).

Material facts that preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. *Id*. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* On the other hand, if, after the court

has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

## III. DISCUSSION

The County moves for summary judgment on Ms. Adams's allegations of disability discrimination and failure to reasonably accommodate under both the ADA and the Rehabilitation Act. (Doc. 26.) The Court will address these arguments in turn. Because the standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the ADA, the Court will analyze Ms. Adams's claims under both statutes in tandem. *See Wong v. Regents of Univ. of Ca.*, 192 F.3d 907, 822 n.34 (9th Cir. 1999).

### A. Disability Discrimination Under the ADA and Rehabilitation Act

The ADA and the Rehabilitation Act prohibit discrimination against qualified individuals based on disability. 42 U.S.C. § 12112(a); 29 U.S.C. § 794(a). Under both statutes, discriminatory acts include discharging an individual because of disability. The Court analyzes such claims using the three-step burden-shifting test presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of disability discrimination, by showing that: "(1) she is 'disabled' within the meaning of the statute; (2) she is a 'qualified individual' (that is, she is able to perform the essential functions of her job, with or without reasonable accommodations); and (3) she suffered an adverse employment action 'because of' her disability." *Vasquez v. Smith's Food & Drug Ctrs., Inc.*, No. CV-14-2339-TUC-DCB, 2017 WL 1233840, at *4 (D. Ariz. Apr. 4, 2017) (citing *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001)).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). "If the employer meets this burden, the presumption of intentional discrimination disappears." *Id.* (citation omitted). The plaintiff must then offer evidence that would permit a reasonable trier of fact to conclude that "the defendant's

proffered reasons for its actions are a mere pretext for unlawful discrimination." *Rivera v. FedEx Corp.*, No. C 12-1098 PHJ, 2013 WL 6672401, at *4 (N.D. Cal. Dec. 18, 2013). "If the plaintiff succeeds in demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case proceeds beyond the summary judgment stage." *Id.*

        **1.     Prima Facie Case**

            **a.     Disabled**

A plaintiff is considered "disabled" if she has "(1) 'a physical or mental impairment that substantially limits one or more major life activities of such individual;' (2) 'a record of such an impairment;' or (3) is 'regarded as having such an impairment.'" *Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 WL 4899603, at *14 (D. Ariz. Oct. 9, 2018) (quoting 42 U.S.C. § 12102(1)). As noted, Ms. Adams alleges that she suffers "from, among other maladies, Bi-Polar Disorder I ('BPD'), Generalized Anxiety Disorder ('GAD'), Post Traumatic Stress Disorder ('PTSD') and depression." (Doc. 27 at 21 ¶ 5). The County has submitted evidence in the form of a letter from her psychiatrist, Dr. Hicks, stating that Ms. Adams was "released to work full duty" on August 8, 2018, following her FMLA leave. (Doc. 27-4 at 24.) Generally speaking, "[a] doctor's release to work without restrictions supports a finding that the person no longer suffers from a 'disability.'" *Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019) (citing *Rivera*, 2013 WL 6672401 at *4). Ms. Adams argues that the release does not demonstrate that she has no disabilities. (Doc. 27 at 8.) The form pertained to her FLMA leave; the indication that she "could return to 'full duty' on August 8, 2020 from a leave meant to give her time to adjust to her medications means nothing more than what it says." (*Id.*).

The County also argues that Ms. Adams herself denied any disability or the need for accommodation. Ms. Adams stated in an interview conducted by Ms. Terribile, the HR Manager, that there was no medical reason that she could not perform the essential functions of her position, that she was "completely and totally fit to perform the essential functions of [her] duties." (Doc. 26 at 47-50.) Ms. Adams responds that the statements

made to Ms. Terribile were solely related to her alleged memory deficits. "There was no other disability-related discussion." (*Id.*) Ms. Adams also states that her neurological disabilities affect her sleeping, eating, concentrating, thinking and interacting with others. (Doc. 27 at 22 ¶¶ 7-11.)

The Court concludes that, particularly in light of her asserted disabilities and their effects, a jury could reasonably find that Ms. Adams is disabled. *See Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (on a motion for summary judgment, the evidence must be viewed "in the light most favorable to the non-moving party").

### b. Qualified Individual

A plaintiff is considered a "qualified individual" if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The "essential functions" of the employment position are the individual's "fundamental duties." *Garcia v. Johnson*, 630 F. App'x 684, 686 (9th Cir. 2015) (citations omitted); *see also* 29 C.F.R. § 1630.2(n). The plaintiff bears the burden of proving that she is "qualified" and can perform the job's essential functions. *See Bates v. Unied Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). If the plaintiff cannot perform the job's essential functions—even with a reasonable accommodation—then the ADA's protections do not apply. *Id.* at 989 (citing *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001)). An employer is not required to exempt an employee from performing essential job functions. *Dark v. Curry Cty.*, 451 F.3d 1078, 1089 (9th Cir. 2006).

The County argues that "courtesy in dealing with others including co-workers, staff, court staff, and judicial personnel was an essential function of Plaintiff's position." (Doc. 26 at 13.) Ms. Adams was required to cover court hearings and to communicate with other County employees. The County also points to various rules establishing a courtesy requirement for all employees. For example, Maricopa County Internal Policy HR 2516, titled "Code of Conduct," states "[e]mployees shall be . . . courteous while working"; "communications shall be professional, courteous, and free from derogatory or disparaging comments"; and "[e]mployees shall treat other [e]mployees, subordinates, and supervisory

staff respectfully and courteously." (Doc. 26 at 26.) Further, as the County notes, in conducting the disability discrimination analysis, "consideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8).

Ms. Adams responds that courtesy is not an essential job function. She notes that the job description for her position does not include courtesy as a requirement. (Doc. 27 at 9-10.) Rather, Ms. Adams argues, courtesy may at most be "a policy requirement." (*Id*.) She also points to multiple performance evaluations showing that she consistently received "met performance" or "exceeds" ratings over the course of her 20 years with the County. (*Id*. at 10.) She argues that these evaluations are "evidence that [she] was able to perform the essential functions of the job." (*Id*.)

The Court notes that the performance evaluation forms also contain scoring factors related to "professionalism" and "compliance with policies and procedures." (*See, e.g.*, Doc. 27-2 at 16.) Ms. Adams was disciplined numerous times for violating such policies. (*See, e.g.*, Doc. 26 at 26-27.) The evaluations indicate that Ms. Adams was on notice that the County considered courtesy to be a required element of her position. Further, courtesy in dealing with others is required by civilized society at large, especially by attorneys and others in the legal profession. To argue otherwise belies reason.

Nonetheless, based in significant part on the evaluations indicating that she "met" or "exceed[ed]" performance standings throughout her tenure, the Court concludes that Ms. Adams has provided evidence that a reasonable jury could conclude she is a "qualified individual" who "can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). For the purposes of summary judgment, she has established this element of the prima facie test.

    **c.**  **Adverse Employment Action "Because Of" Disabilities**

To state a prima facie case of disability discrimination, Ms. Adams must also demonstrate that she suffered an adverse employment action "because of" her disability. *See Hutton*, 273 F.3d at 891. An adverse employment action is "one that materially alters the 'terms and conditions' of the plaintiff's employment." *Mamola v. Group Mfg. Servs.*,

No. CV-08-1687-PHX-GMS, 2010 WL 1433491, at *6 (D. Ariz. Apr. 9, 2010) (citing *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002)). The County argues that no adverse employment action was taken "because of" Plaintiff's disability. It states that Ms. Adams "was not terminated because she was irritated, frustrated, had a short temper, or had mood swings." (Doc. 29 at 5.) Rather, she was terminated because she made rude statements when she became "displeased." (*Id*.) Ms. Adams responds that her behaviors were manifestations of her disabilities, and that the County knew of her disabilities before it decided to terminate her employment. (Doc. 27 at 10-15.) For purposes of summary judgment, the Court agrees with Ms. Adams.

The County relies on *Trammell v. Raytheon Missile Systems*, 721 F. Supp. 2d 876 (D. Ariz. 2010) for the proposition that:

> Traits and behaviors, like stress, irritability, chronic lateness, and poor judgment, in themselves are not mental impairments, but they may be related to a mental impairment. Misconduct, even if the misconduct resulted from a disability, is not excused and an employer may discipline an individual with a disability provided that the workplace conduct is job-related for the position in question and is consistent with business necessity.

*Id*. at 879 (citations omitted). *Trammell*'s holding, however, is at odds with other ADA discrimination cases in this circuit. Those cases hold that conduct arising from a disability is considered part of the disability, rather than a separate basis for termination. *See Gambini v. Total Renal Care*, 486 F.3d 1087, 1093 (9th Cir. 2007) ("[W]here an employee demonstrates a causal link between the disability-produced conduct and the termination, a jury must be instructed that it may find that the employee was terminated on the impermissible basis of her disability."); *Menchaca v. Maricopa Cmty. Coll. Dist.*, 595 F. Supp. 2d 1063, 1075 (D. Ariz. 2009) (acknowledging that under "Ninth Circuit ADA law," conduct resulting from a disability is not a legitimate basis for termination). For the purposes of this inquiry, all that a plaintiff need establish is that her conduct manifested from a disability.

Ms. Adams has satisfied this requirement. Her affidavit asserts that she suffers from

various symptoms due to her disabilities, and that "as a result of [her] disabilities, [she] periodically acted out in inappropriate ways" during her employment with the County. (Doc. 27 at 22.) She has also provided a report from psychologist C. Brady Wilson, who stated, in part, that "the behavioral disruptions experienced by a person who suffers from Bipolar Disorder I are consistent with the behaviors and outbursts identified in The Notice of Termination of Ms. Adams' employment. In reading through the Notice of Termination and other documents made available to me, her behavior at issue at work is exactly that of a person suffering from Bipolar Disorder I." (Doc. 27-4 at 19.) Based on this evidence, a reasonable jury could conclude that Ms. Adams was terminated for conduct arising from her disability. Ms. Adams has established this final prima facie factor.

### 2. Legitimate, Nondiscriminatory Reason

Given that Ms. Adams has stated a prima facie case, the burden shifts to the County to articulate a legitimate, nondiscriminatory reason for terminating her. *Raytheon Co.*, 540 U.S. at 49 n.3 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). A defendant is not required to persuade the Court that an employment action was "actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Instead, a defendant need only raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* at 254–55.

As described above, the County argues that it terminated Ms. Adams for the legitimate, nondiscriminatory reason that she was discourteous to coworkers, colleagues, and staff—for which she was repeatedly reprimanded and counseled. (Doc. 26 at 1) (Ms. Adams was terminated "for rudeness toward others in violation of County policies."). Ms. Adams does not deny her rudeness. She asserts, with respect to her interaction with Ms. Landeros, that she was "very displeased and let [Ms.] Landeros know it." (Doc. 27 at 23 ¶ 21.) She also states that she "periodically acted out in inappropriate ways" at work. (*Id.* at 22 ¶ 15, 16.) The Court agrees with the County and finds that there is no genuine issue of material fact on this point.

### 3. Pretext

Once an employer offers a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason is a pretext for disability discrimination. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). Ms. Adams does not present any direct evidence of pretext. In fact, her briefing does not reference "pretext" whatsoever. Instead, she focuses on the notice she gave after receiving the County's intent to terminate letter. (Doc. 27 at 5-6.) This circumstantial evidence is not specific or substantial enough to overcome summary judgment. Given the sequence of events, the Court finds that it is not conceivable that the County's decision to terminate was based on a discriminatory motive.

The February 4, 2019 intent to terminate letter outlined specific, enumerated instances of Ms. Adams's disruptive behavior spanning nearly two decades. Critically, at the time this letter was issued, the County was not aware of her claimed disabilities. The Court interprets Ms. Adams's argument to be this: because of her post-hoc notice of disability and request for accommodations, she was excused of all past violations of County policy and is entitled to avoid termination. That is not supported by substantive law. *See Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 922 (9th Cir. 2017) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability") (citation omitted); EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, question # 36 ("An employer must make reasonable accommodation to enable an otherwise qualified employee with a disability to meet ... a conduct standard *in the future*, barring undue hardship, except where the punishment for the violation is termination.") (emphasis added).

Ms. Adams has not demonstrated that the County's reason for terminating her was merely a pretext. The County is entitled to summary judgment on Plaintiff's claims of discrimination based on disability.

### B. Failure to Accommodate under the ADA and Rehabilitation Act

Ms. Adams also argues that the County failed to accommodate her due to her disabilities. (Doc. 1 at 6, 8.) Under both the ADA and the Rehabilitation Act, an employer discriminates if it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a). Under Ninth Circuit case law, failing to provide a reasonable accommodation "is an act of discrimination if the employee is a qualified individual, the employer receives adequate notice, and a reasonable accommodation is available." *Lezama v. Clark Cty.*, 817 F. App'x 341, 344 (9th Cir. 2020). Ms. Adams claims that the County failed to engage in the required interactive process in response to her requests for accommodations. The County argues that the accommodation requests were made too late and that no reasonable accommodation was available. The Court agrees with the County.

#### 1. Qualified Individual

For the same reasons as described above, a reasonable jury could conclude that Ms. Adams is a "qualified individual" who "can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).

#### 2. Adequate Notice

The Court next turns to the issue of whether the County received adequate notice of an accommodation request. Generally, "it is the responsibility of the individual with a disability to inform the employer than accommodation is needed." 29 C.F.R. § Pt. 1630, App. The "Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transportation Union*, 889 F.3d 1088,

1095 (9th Cir. 2018), cert. denied sub nom. Nonetheless, "[o]nce termination is imminent according to the employer's policy, a request for accommodation is too late. It does not matter whether the employee was aware of the disability." *Alamillo v. BNSF Ry. Co.*, No. CV1408753SJOSSX, 2015 WL 11004494, at *7 (C.D. Cal. June 16, 2015), aff'd, 869 F.3d 916 (9th Cir. 2017).

The parties dispute whether the County had made the final decision to terminate Ms. Adams when it sent the February 4, 2019 "Intent to Dismiss" letter. (Doc. 26 at 24.) Mr. Haas, the then-Public Defender, stated in his affidavit that he decided to terminate Ms. Adams "[p]rior to February 4, 2019," based on her "discourteous treatment of others in violation of various Maricopa County policies." (Doc. 26 at 19.) Ms. Adams, for her part, cites to the County Merit System Rule 9.03(A), which she states requires a "Notice of Intent" to be sent prior to a termination action "with a written statement of the proposed action; an opportunity to provide reasons why the proposed action should not be taken before providing the employee notice of the final decision; and a written notice of the final decision." (Doc. 27 at 12.) Accordingly, Ms. Adams asserts that it is not possible that Mr. Haas had made a "final" decision to terminate her on February 4, 2019.

The Court need not resolve this dispute. Even accepting Ms. Adams's assertions as true, her termination was "imminent" when she notified the County of her disabilities in the February 11, 2019 letter. The County had, at that point, already provided notice of its intent to terminate. (Doc. 26 at 24.) Further, Ms. Adams's actions prior to that point had provided the County with no reason to believe that she suffered from any disabilities. For example, Ms. Adams had returned to work only two days prior to the incident with Ms. Landeros—and with a physician's clearance to work "with no restrictions." (Doc. 27-4 at 24.) Further, during the County's subsequent investigation, Ms. Adams told the HR Manager, Ms. Terribile, that she had no limitations from a disability and that there was "no medical reason [she] can't perform the essential functions" of her position. (Doc. 25 at 44.) At the time the County informed Ms. Adams of its intent to terminate her, there was no reason for the County to believe that she was disabled.

The notice element is necessary because if the County "were truly unaware that such a disability existed, it would be impossible for [any adverse employment action] to have been based . . . on [Plaintiff's] disability." *Raytheon Co.*, 540 U.S. at 54 n.7. Further, it is important to distinguish between an employer's knowledge of an employee's *disability* and an employer's knowledge of any *limitations* experienced as a result of that disability. This distinction is important because "[e]mployers are obligated to make reasonable accommodations only to the physical or mental limitations resulting from the disability of an individual with a disability that is known to the employer." 29 C.F.R. § Pt. 1630, App. *See also Foster v. City of Oakland*, No. C-08-01944 EDL, at *2 (N.D. Cal. Aug. 5, 2008) (The "employer's knowledge of the physical [and/or] mental limitations resulting from the employee's disability is a prerequisite to the employer's obligation to make reasonable accommodations."). Here, given that the County had no reason to know of Ms. Adams's disabilities or limitations when it notified her of its intent to terminate, the requests for accommodation were "too late." *Alamillo*, 2015 WL 11004494, at *7.

Further, even if the County was required to engage in a good-faith undertaking of the interactive process between the intent to terminate letter and the official termination letter (February 4 and 19, 2019, respectively), it was not required to address the behavior that precipitated the termination. Ms. Adams argues that Mr. Haas was "required to consider the employee's response [to the notice of intent to terminate] before making a final decision" based on the County's Merit Rule 9.03. (Doc. 27 at 15.) As the County points out (Doc. 29, at 9-10), however, that argument incorrectly assumes that Mr. Haas would have been forced to change his plan to terminate Ms. Haas based solely on her untimely claim of disability limitation. That argument overlooks the fact that only *prospective* protections are afforded by the ADA. *See Alamillo*, 869 F.3d at 922 ("[A]n employer is not required to excuse past misconduct even if it is the result of the individual's disability.") (citation omitted).

Ms. Adams also overlooks the fact that the ADA does not shield those with disabilities from adhering to workplace policy and essential job functions. *See Collings v.*

*Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995) (There is a "distinction between termination of employment because of misconduct and termination of employment because of a disability."); *Daft v. Sierra Pac. Power Co.*, 251 F. App'x 480, 483 (9th Cir. 2007) (Termination for . . . misconduct is permitted under the ADA, even if the misconduct was related to [the plaintiff's] alleged disability."). The Court finds that Ms. Adams has not provided a genuine dispute of material fact. A reasonable jury could not find that the County was required to engage in the interactive process, to provide accommodations to account for her past misconduct, or to overlook past misconduct. The County was not required to change its termination plans based on Ms. Adams's untimely request for accommodation.

### 3. Reasonable Accommodation

Even had the Court found that the County had a duty to engage in the interactive accommodation process, Ms. Adams has not presented evidence that a reasonable accommodation was facially possible. A "reasonable accommodation" is defined in this context as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). To make a prima facie showing of failure to accommodate, a plaintiff must show that a reasonable accommodation is facially possible. *Pickens v. Astrue*, 252 Fed. Appx. 795, 796 (9th Cir. 2007). A plaintiff bears the burden to demonstrate that the proposed accommodation "would, more probably than not, have resulted in [her] ability to perform the essential functions of [her] job." *Trujillo v. U.S. Postal Serv.*, 330 F. App'x 137, 139 (9th Cir. 2009) (citation omitted).

Ms. Adams suggests that a leave of absence, flexible hours, working from home, and/or a "self-paced workload" would have been reasonable accommodations. She states that these "accommodations could at least *plausibly* have lessened [her] irritability and helped to avoid significantly negative interactions." (Doc. 27 at 17) (emphasis in original). As the County argues, Ms. Adams has not demonstrated that these accommodations would

have enabled her to perform her essential job functions. Ms. Adams, in fact, was "abusive" to staff shortly after returning from a leave of absence. (Doc. 29 at 10.) Further, the record indicates that being absent from work and having other attorneys handle her cases caused her displeasure. Nonetheless, she now "suggests a leave of absence, working from home, and having other attorneys handle her cases as possible accommodations. Each of these would amplify her displeasure." (*Id.*)

Although the Court need not reach this determination, based on Ms. Adams's failure to provide adequate notice, the Court also concludes that Ms. Adams has not presented evidence that a reasonable accommodation was facially possible. For this independent reason, her failure to accommodate claims also fail.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** the County's Motion for Summary Judgment. (Doc. 26.) The Clerk of the Court shall enter judgment in the County's favor on all of Plaintiff's claims and close this case.

Dated this 30th day of October, 2020.

Michael T. Liburdi
United States District Judge